STATE OF NORTH CAROLINA v. BERNARD DARRILL DEGREE

No. 635A87

(Filed 5 May 1988)

**1. Rape and Allied Offenses § 4.3— victim's sexual behavior—impeachment of testimony—exclusion of expeditionary questions**

   Even though the State, by eliciting testimony of a rape victim on direct examination that she had not had intercourse with any man other than defendant prior or subsequent to the date of the crime, may have opened the door to defendant's introduction of evidence for impeachment purposes regarding the victim's sexual behavior, mere expeditionary questions which defendant asked the victim on cross-examination were properly excluded by the trial court under the rape shield statute. N.C.G.S. § 8C-1, Rule 412(b) (1986).

**2. Criminal Law § 169.3— defendant's statement of birthdate—absence of Miranda warnings—erroneous admission cured by other evidence**

   Assuming, *arguendo*, that the court in a first degree rape case erred in admitting defendant's statement to an officer as to his birthdate because defendant had not been given the *Miranda* warnings, such error was harmless beyond a reasonable doubt in view of testimony as to defendant's age, birthdate, or both by the victim and by defendant's mother, father, sister and niece.

**3. Rape and Allied Offenses § 11— rape of child under age thirteen—sufficiency of evidence**

   The evidence was sufficient to support defendant's conviction of first degree rape under N.C.G.S. § 14-27.2(a)(1) (1986) where the victim testified that

in September 1986 defendant penetrated her vagina with his penis for a period of five to ten minutes, that she was born on 7 January 1975, and that she was eleven years old in September 1986, and where several witnesses testified that defendant was born on 20 July 1968, thus making him eighteen years old and more than four years older than the victim at the time of the offense.

APPEAL of right by defendant pursuant to N.C.G.S. § 7A-27(a) (1986) from a conviction of first degree rape before *Gudger, J.,* and the imposition of a life sentence, at the 13 July 1987 Criminal Session of Superior Court, CATAWBA County. Heard in the Supreme Court 12 April 1988.

*Lacy H. Thornburg, Attorney General, by Linda Anne Morris, Associate Attorney General, for the State.*

*E. X. de Torres for defendant-appellant.*

WHICHARD, Justice.

Defendant was convicted of first degree rape, N.C.G.S. § 14-27.2(a)(1) (1986), and sentenced to life imprisonment. We find no error.

The State's evidence, in pertinent part, showed the following:

On 13 September 1986 the victim, age eleven, spent the night with defendant's sister, Tenisha Degree, age twelve, at the home of defendant's mother. The victim slept in a bed with the sister, but the sister got up and left the room sometime during the night.

Defendant came into the room and lay down on top of the victim. He tried to pull up the victim's skirt, to pull down her underclothes, and to insert his penis into her vagina. The victim resisted, but defendant ultimately "got it in [and] start[ed] moving around."

The victim tried to push defendant off, but he would not get up. She felt defendant's penis moving around in her vagina. Defendant was on top of her with his penis inside her vagina for about five or ten minutes. The following morning the victim told Danielle Kee, defendant's niece: "[L]ast night [defendant] got me."

The victim had not been "seeing" or "dating" defendant. She had not had previous or subsequent intercourse with anyone other than defendant.

In January 1987 the victim went to the health department because she had been feeling sick and sleeping a lot. She was found to be approximately twenty-one weeks pregnant. She told her mother that defendant was the father. The baby was born on 27 May 1987.

An investigating officer with the Hickory Police Department testified that the victim told him that defendant had intercourse with her on approximately 13 September 1986. He further testified that defendant told him that defendant's birthdate was 20 July 1968.

Defendant presented the following pertinent evidence:

Danielle Kee, defendant's niece, denied that the victim had told her that defendant "got her." She testified that on the morning following the alleged incident, the victim did not seem upset and did not mention that anything had happened. She further testified that defendant had requested that she ask the victim why she had told "that lie" on him. When she did, the victim responded: "I didn't tell no lie. My momma told that lie." On cross-examination Kee testified that defendant was eighteen years old.

Tenisha Degree, defendant's sister, testified that the victim had not told her that defendant had done anything to her. She had not noticed anything indicating that the victim was upset. On cross-examination she testified that defendant's birthdate was 20 July 1968 and that he was eighteen years old at the time of trial.

Sonya Kee, defendant's niece, testified that the victim had not mentioned the incident to her. She further testified that defendant had never told her that he had sex with the victim.

Minnie Degree, defendant's mother, testified that on the day following the alleged incident she had not noticed anything unusual about the victim. Defendant had never told her that he had sex with the victim that evening.

On cross-examination, however, she testified that when she asked defendant if he had intercourse with the victim, he said nothing but "just walked away." She further testified on cross-examination that defendant's birthdate was 20 July 1968 and that he was eighteen years old at the time of trial.

Leroy Gantt, defendant's father, testified that when he "got on [defendant's] case" about having "sex with this girl," defendant denied it. He testified on cross-examination that defendant was born on 20 July 1968.

**[1]**  On cross-examination of the victim, defense counsel asked:

Q. Now, isn't it true that you'd dated several boys previous to September of '86?

The prosecutor objected. Before the trial court ruled, the victim answered: "No." The court then overruled the objection.

Defense counsel next asked:

Q. Have you ever dated Marcus Hannah?

The prosecutor again objected, the court sustained the objection, and the victim nevertheless responded in the negative.

Defense counsel's next question was:

Q. Now, isn't it true that your mother had to chase some boys out of your bedroom at your house?

The court sustained the prosecutor's objection and thereupon excused the jury. Following discussion in the absence of the jury, the court indicated to counsel that, absent prior inconsistent statements of the victim that would impeach her declaration on direct examination that she had had no prior sexual relations, evidence of the type defense counsel sought to elicit would be excluded. Defendant assigns error to this exclusion.

Nothing else appearing, the exclusion was proper under Rule 412(b), which provides:

(b) Notwithstanding any other provision of law, the sexual behavior of the complainant is irrelevant to any issue in the prosecution unless such behavior:

(1) Was between the complainant and the defendant; or

(2) Is evidence of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant; or

(3) Is evidence of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that such complainant consented to the act or acts charged or behaved in such a manner as to lead the defendant reasonably to believe that the complainant consented; or

(4) Is evidence of sexual behavior offered as the basis of expert psychological or psychiatric opinion that the complainant fantasized or invented the act or acts charged.

N.C.G.S. § 8C-1, Rule 412(b) (1986). The exceptions to inadmissibility contained in the rule are inapplicable here; indeed, defendant does not contend otherwise. He argues, instead, that the State opened the door to questions of this nature by asking the victim on direct examination whether she had had intercourse with any man other than defendant prior or subsequent to 13 September 1986, and that he thus should have been allowed to impeach the victim's negative answer for the purpose of casting doubt on her credibility.

In the absence of the jury, the trial court stated to defense counsel that it "might allow . . . a prior inconsistent statement concerning events relating to other people for the purpose of impeachment only." Defense counsel indicated that "[t]here are no statements other than what [the victim] has said on the stand."

Assuming that the State could, and did, open the door—for impeachment purposes—to the introduction of evidence regarding the victim's sexual behavior, defendant clearly had no such evidence to offer. By the questions asked, he sought to embark upon a fishing expedition, hoping it would yield the desired evidence. Had defendant possessed evidence of the victim's sexual behavior which he contended was relevant for impeachment purposes, he could have requested an in camera hearing to determine its relevancy and admissibility. N.C.G.S. § 8C-1, Rule 412(d) (1986). He made no such request, however, and absent such request exclusion of his merely expeditionary questions accords with the letter and the purpose of the rape shield statute. *Id.*

Defendant next contends that the trial court erred in allowing testimony from an officer in response to a leading question

which contained facts not in evidence. The question related to a reference on the police case folder to an incorrect date of the alleged offense. The matter in question was inconsequential, and this argument is frivolous.

[2] Defendant next contends that the trial court erred in allowing his statement, which included his birthdate, into evidence. The basis of the argument is that the statement served to establish an element of the offense, and the officer had not given defendant the required warnings. *See Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694 (1966).

The following witnesses also testified to defendant's age, birthdate, or both: (1) the victim; (2) defendant's niece; (3) defendant's sister; (4) defendant's mother; and (5) defendant's father. In view of this evidence, assuming, *arguendo*, that the court erred in admitting defendant's statement as to his birthdate, we find the error harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b) (1983); *Chapman v. California*, 386 U.S. 18, 17 L.Ed. 2d 705 (1967).

[3] Defendant next contends that the trial court erred in denying his motion to dismiss made at the close of the State's evidence. We recently stated:

> A motion to dismiss for insufficiency of the evidence is tantamount to a motion for nonsuit under N.C.G.S. [§] 15-173. *State v. Greer*, 308 N.C. 515, 519, 302 S.E. 2d 774, 777 (1983). Under N.C.G.S. [§] 15-173, a defendant who introduces evidence waives any motion for dismissal or nonsuit made prior to the introduction of his evidence and cannot urge the prior motion as ground for appeal. N.C.G.S. [§] 15-173 (1983); *State v. Bruce*, 315 N.C. 273, 280, 337 S.E. 2d 510, 515 (1985); *see also* N.C.R. App. P. 10(b)(3).

*State v. Stocks*, 319 N.C. 437, 438, 355 S.E. 2d 492, 492-93 (1987). Defendant offered evidence following the denial of his motion to dismiss at the close of the State's evidence. The denial of that motion is thus not properly before us for review.

Defendant further contends, however, that the trial court erred in denying his renewed motion to dismiss made at the close of all the evidence. In considering this motion, the trial court was required to view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference

to be drawn from it. *State v. Williams*, 319 N.C. 73, 79, 352 S.E. 2d 428, 432 (1987) (quoting *State v. Young*, 312 N.C. 669, 680, 325 S.E. 2d 181, 188 (1985). If there was substantial evidence — whether direct, circumstantial, or both — to support a finding that the offense charged was committed and that defendant committed it, the case was for the jury, and the motion to dismiss was properly denied. *Id.*

To convict defendant of the offense charged, the State had to prove that he engaged in vaginal intercourse with a victim under the age of thirteen years, when he was at least twelve years old and at least four years older than the victim. N.C.G.S. § 14-27.2(a) (1) (1986). Viewed in the light most favorable to the State, as required, the evidence sufficed to meet the State's burden. The victim testified that she was born on 7 January 1975, that she was eleven years old in September 1986, and that in September 1986 defendant penetrated her vagina with his penis for a period of five to ten minutes. Several witnesses testified that defendant was born on 20 July 1968, thus making him eighteen years old — and more than four years older than the victim — at the time of the offense. There was substantial evidence of all elements of the offense charged and of defendant as the perpetrator. Indeed, defendant does not contend otherwise; he only argues alleged inconsistencies, discrepancies, and weaknesses in the State's case. These, however, were for the jury to resolve. The State had met its burden of proof, and the motion to dismiss was properly denied. For the same reasons, defendant's oral post-trial "Motion for Appropriate Relief . . . and . . . to set aside the verdict as contrary to the weight of the evidence" was also properly denied.[1]

Defendant finally contends that a mandatory sentence of life imprisonment, under the facts of this case, violates the eighth and

---

1. Defendant has included in the appendix to his brief a written motion for appropriate relief dated 22 October 1987 and signed by counsel other than his counsel on appeal. The motion is captioned in the Superior Court Division, Catawba County, and apparently has been filed in that division. Defendant acknowledges that this motion has not been heard or ruled upon by the trial court, but nevertheless asks that we consider the "additional evidence" contained therein in passing upon the propriety of the denial of his oral motion at trial for appropriate relief and to set aside the verdict.

So far as the record before us reveals, the Superior Court, Catawba County, has not passed upon that motion. Matters contained therein thus are not properly before us, and we have not considered them.

fourteenth amendments to the United States Constitution and Article I, section 27 of the North Carolina Constitution. Defendant did not present this argument in the trial court, however, and it is well-established that appellate courts ordinarily will not pass upon a constitutional question unless it was raised and passed upon in the court below. *State v. Hunter*, 305 N.C. 106, 112, 286 S.E. 2d 535, 539 (1982); *State v. Dorsett and State v. Yow*, 272 N.C. 227, 229, 158 S.E. 2d 15, 17 (1967). We thus do not pass upon the question.

We note, however, that we have held that a mandatory sentence of life imprisonment for first-degree sexual offense is not so disproportionate as to constitute a violation of the eighth amendment to the Constitution of the United States. *State v. Higginbottom*, 312 N.C. 760, 324 S.E. 2d 834 (1985). *See also State v. Cooke*, 318 N.C. 674, 351 S.E. 2d 290 (1987) (refusal to reconsider eighth amendment holding in *Higginbottom*). "Since it is the function of the legislature and not the judiciary to determine the extent of punishment to be imposed, we accord substantial deference to the wisdom of that body." *State v. Higginbottom*, 312 N.C. at 763-64, 324 S.E. 2d at 837.

No error.