IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-515

Filed 6 May 2026

New Hanover County, Nos. 21CR058306-640, 21CR058307-640

STATE OF NORTH CAROLINA

v.

NAUN ALCANTAR-CONRADO, Defendant.

Appeal by Defendant from judgments entered 28 March 2024 by Judge Tiffany Peguise-Powers in New Hanover County Superior Court. Heard in the Court of Appeals 14 January 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General Natalia Isenberg, for the State.*

> *Caryn Strickland for Defendant.*

GRIFFIN, Judge.

Defendant Naun Alcantar-Conrado appeals from judgments entered after a jury found him guilty of two counts of taking indecent liberties with a child, incest with a child less than thirteen years old, statutory rape of a child by an adult, and statutory sex offense with a child by an adult. Defendant argues the trial court erred by excluding a Carousel Center report and a Department of Social Services ("DSS") report. Although Defendant claims both issues are preserved, he alternatively asserts plain error and ineffective assistance of counsel if the issues are unpreserved. We hold Defendant failed to demonstrate prejudice from the alleged error of excluding

the Carousel Center Report. Additionally, we hold the trial court did not err in its exclusion of the DSS report. Consequently, we need not address Defendant's alternative arguments.

## I.    Factual and Procedural Background

On 30 October 2021, Abigail,[1] five years old at the time, was diagnosed with a sexually transmitted infection ("STI") at a doctor's appointment. The following day, DSS workers interviewed Abigail and Mary Margaret,[2] Abigail's ten-year-old stepsister, for multiple hours. During this interview, Abigail denied Defendant inappropriately touched her.

Less than two weeks later, DSS and law enforcement began their investigation into the situation. The same day the investigation began, nurse practitioner and expert witness, Kelly Ezzell, conducted a medical examination on Abigail at the Carousel Center. The examination yielded Abigail's positive test result for Triochomonas vaginalos, a sexually transmitted disease. During the investigation, Defendant went to the police station and denied abusing Abigail.

As indicated from the child medical evaluation report from her second Carousel Center interview on 18 November 2021, Abigail stated she did not want Jesus, Defendant's ex-wife's ex-boyfriend, in the house. Further, Abigail initially told Gina Solari, licensed clinical therapist, forensic interviewer, and expert witness, that Jesus

---

[1] We use a pseudonym to protect the identity of the minor. *See* N.C. R. App. P. 42.

[2] Again, to protect the minor's identity, we use a pseudonym. *See* N.C. R. App. P. 42.

was sleeping in the bed with her and her mom, but, in response to Solari's clarifying question, Abigail then said Jesus was not sleeping in the bed with her. Solari did not ask follow-up questions to these statements.

At trial, in March 2024, Abigail testified Defendant put a "spiky thing" in her private part. Additionally, the State moved to introduce Abigail's first Carousel Center interview for substantive purposes. The trial court admitted this evidence under Rule 803(4) of the North Carolina Rules of Evidence, the medical diagnosis or treatment hearsay exception.

Later in the trial, Defendant attempted to introduce Mary Margaret's statements, contained within her 14 December 2021 Carousel Center report, alleging Abigail's mother had been "coaching" Abigail. Defendant argued these statements were also admissible under Rule 803(4). However, the trial court excluded the report.

Moreover, during trial, Solari testified there was no indication Abigail had been coached. Ezzell also testified that coaching a five-year-old child to say something occurred is more difficult than coaching the child to say something didn't happen. Further, Ezzell testified Abigail's mother struggled in accepting that Defendant was the perpetrator. Additionally, a detective testified that by the time DSS and law enforcement became involved in this situation, Defendant could have already treated any STI. Thus, instructing Defendant to get tested for an STI would have been futile.

Darian Roberts, a DSS social worker, testified at trial, as well. He was responsible for investigating a new sexual-abuse allegation from 7 April 2022 also concerning Abigail. The allegation came from an unknown individual. Roberts testified the latest allegations stated Abigail "had pointed to her vagina and said that 'they put something up there' and that she had lied about [Defendant] doing it." Furthermore, Defendant attempted to introduce the 7 April 2022 DSS report, the report Roberts had been assigned to, but the State objected to its admission on hearsay grounds. The trial court excluded this report as inadmissible hearsay.

The jury convicted Defendant on two counts of taking indecent liberties with a child, incest with a child less than thirteen years old, statutory rape of a child by an adult, and statutory sex offense with a child by an adult. In open court, Defendant gave oral notice of "his intent to appeal."

## II. Analysis

### A. Appellate Jurisdiction

Defendant first argues he should be granted appellate review despite possible fault in his notice of appeal.

"Notice of appeal shall be given within the time, in the manner and with the effect provided in the rules of appellate procedure." N.C. Gen. Stat. § 15A-1448(b) (2023). In a criminal action, one way a party may take appeal, when entitled by law to do so, is by "giving oral notice of appeal at trial." N.C. R. App. P. 4(a). "Oral notice

of appeal must be given after entry of the final judgment." *State v. Jordan*, ___ N.C. App. ___, ___, 925 S.E.2d 37, 38 (2025) (citation omitted).

This Court routinely grants certiorari "where a defendant's intent to appeal was clear and their right to appeal would otherwise be lost through a technical mistake by their attorney." *State v. Gardner*, 299 N.C. App. 251, 254–55, 917 S.E.2d 494, 498 (2025) (citations omitted).

Here, along with his appeal, Defendant filed a petition for writ of certiorari to permit the review of his judgment and sentence. After entry of Defendant's judgment and sentencing, Defendant's trial counsel stated, "[Defendant] requests me to let the Court know of his intent to appeal." The trial court responded: "Absolutely. I'll sign the orders." Furthermore, the State entered a notice of appearance in this appeal, demonstrating it was on notice of Defendant's appeal.

The issue turns on whether Defendant's inclusion of "intent to" was insufficient for notice of appeal. Even assuming arguendo Defendant's trial counsel failed to properly give notice of appeal, Defendant plainly expressed an intent to appeal. Furthermore, the trial court's affirmative response and the State's notice of appearance for the appeal support the clarity of Defendant's intent. *See id*. Thus, in our discretion, we allow Defendant's petition for writ of certiorari to reach the merits of the appeal.

**B. Preservation**

Defendant claims the medical diagnosis or treatment hearsay exception, opening the door argument, public records and reports hearsay exception, and business records hearsay exception are all preserved.

To preserve an issue on appeal, a defendant must have timely requested, objected, or moved, stating the specific grounds, unless they are apparent from context. N.C. R. App. P. 10(a)(1). North Carolina appellate courts have "long held that where a theory argued on appeal was not raised before the trial court, 'the law does not permit parties to swap horses between courts in order to get a better mount in'" an appellate court. *State v. Sharpe*, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996) (citation omitted) (holding the defendant could not argue a new ground for admissibility on appeal that he did not present to the trial court, due in part to the defendant's express use of a different authority); *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982) ("The theory upon which a case is tried in the lower court must control in construing the record and determining the validity of the exceptions."). "[W]here a theory argued on a[n] appeal was not raised before the trial court[,] the argument is deemed waived on appeal." *State v. Davis*, 207 N.C. App. 359, 363, 700 S.E.2d 85, 88 (2010) (citations omitted).

Further, to ensure preservation for appellate review of the exclusion of evidence, a party must show the significance of the excluded evidence and make a specific offer of proof, unless the significance is obvious from the record. *State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985) (citation omitted). Additionally,

a party must demonstrate the essential content of the testimony so this Court can determine whether a prejudicial error occurred. *State v. Capps*, 298 N.C. App. 412, 415, 914 S.E.2d 472, 475 (2025) (citation omitted). An informal offer of proof, where a party represents the content of the testimonies he or she would provide to the court, may be sufficient to establish such essential content. *State v. Martin*, 241 N.C. App. 602, 605, 774 S.E.2d 330, 333 (2015) (citation omitted).

Here, after the trial court's exclusion of Mary Margaret's Carousel Center report, Defendant's counsel stated, "[O]bjection: It is a medical documentation. The medical documentations are outside the hearsay rule, and they are self-authenticating." Therefore, it is evident Defendant was objecting on hearsay grounds. Nevertheless, it is less obvious on which hearsay exception Defendant relied. While Defendant did not specify "Rule 803(4)" or the "medical diagnosis or treatment" exception, this lack of specification does not automatically mean Defendant's issue is unpreserved. Rather, it is apparent from context that Defendant tried to invoke Rule 803(4) as Defendant's counsel stated he wanted "to bring in another medical record on [Mary Margaret]." Defendant's use of "another" signals a likeness in kind to a previous Carousel Center medical record, such as Abigail's, which the court already admitted under Rule 803(4). *See State v. Anderson*, 295 N.C. App. 168, 174, 905 S.E.2d 297, 302–03 (2024) (citation omitted) (determining, from the context, the objection was clearly for hearsay).

Additionally, Defendant made an informal offer of proof by representing to the court that Mary Margaret's Carousel Center report would include evidence of the mother's coaching. This information conveyed the essential content of coaching that the statements within the report would provide. The significance, that it could have swayed a child's statements, is obvious from the record. All considering, Defendant preserved the admissibility issue of Mary Margaret's Carousel Center report on appeal.

Furthermore, Defendant claims the State opened the door to the admission of Mary Margaret's Carousel Center report. However, we do not need to address the merits of this argument as Defendant failed to preserve it at trial. Therefore, he waived it on appeal.

Defendant also requested the trial court to admit the 7 April 2022 DSS report. During trial, Defendant specified this report should be admissible under the grounds of Rule 803(8), the public records and reports hearsay exception. On appeal, Defendant also asserts this report should have been admitted under Rule 803(6), the business records hearsay exception. However, Defendant failed to raise the business records hearsay exception for this report before the trial court; therefore, Defendant may not assert this theory in addition to the public records exception he requested at trial. *See Sharpe*, 344 N.C. at 194, 473 S.E.2d at 5 (citation omitted). Therefore, Defendant preserved the public records exception theory but waived the business

records exception on appeal. *Davis*, 207 N.C. App. at 363, 700 S.E.2d at 88 (citation omitted).

## C. Hearsay Exceptions

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2024). Hearsay is inadmissible unless an exception applies. N.C. Gen. Stat. § 8C-1, Rule 802 (2024).

### 1. *The Medical Diagnosis or Treatment Hearsay Exception*

Defendant contends the trial court erred by excluding Mary Margaret's Carousel Center statements because they fall within the medical diagnosis or treatment hearsay exception.

"Statements made for purposes of medical diagnosis or treatment" fall within a hearsay exception, even when the declarant is available. N.C. Gen. Stat. § 8C-1, Rule 803(4) (2024). Specifically, such statements are admissible when they were "made for purposes of medical diagnosis or treatment" and describe "medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." *Id.* "A trial court's determination that an out-of-court statement is inadmissible under Rule 803(4) is reviewed de novo." *State v. Corbett*, 376 N.C. 799, 811, 855 S.E.2d 228, 238 (2021) (citation omitted).

Statements made for purposes of medical diagnosis or treatment require a two-part analysis: "(1) whether the declarant's statements were made for purposes of medical diagnosis or treatment; and (2) whether the declarant's statements were reasonably pertinent to diagnosis or treatment." *State v. Hinnant*, 351 N.C. 277, 284, 523 S.E.2d 663, 667 (2000) (citation omitted). Additionally, this exception only applies to statements made by a declarant receiving the diagnosis or treatment. *Anderson*, 295 N.C. App. at 175, 905 S.E.2d at 303 (citing *State v. Jones*, 339 N.C. 114, 146, 451 S.E.2d 826, 842 (1994)).

Generally, statements made as to a perpetrator's identity are seldom germane to a medical diagnosis or treatment; however, "in the context of a child sexual abuse or child rape, a victim's statements to a physician as to an assailant's identity are pertinent to diagnosis and treatment." *State v. Aguallo*, 318 N.C. 590, 597, 350 S.E.2d 76, 80 (1986). The identity of such a perpetrator is pertinent because (1) "a proper diagnosis of a child's psychological problems resulting from sexual abuse or rape will often depend on the identity of the abuser" and (2) "information that a child sexual abuser is a member of the patient's household is reasonably pertinent to a course of treatment that includes removing the child from the home." *Id*.

The rationale for Rule 803(4) is that "statements made for purposes of medical diagnosis or treatment are inherently trustworthy and reliable because of the patient's strong motivation to be truthful." *Hinnant*, 351 N.C. at 284, 523 S.E.2d at 668 (citation omitted). "At its core, the exception is predicated on the presumptive

trustworthiness of a declarant who 'is motivated to describe accurately his or her symptoms and their source' in order to obtain a proper diagnosis and appropriate treatment." *Corbett*, 376 N.C. at 812, 855 S.E.2d at 239 (citation omitted). However, in some scenarios, a child declarant's subjective motivation may be difficult to discern. *Id.* Therefore, appellate courts review objective circumstances and record evidence to ascertain whether such child "declarant had the proper treatment motive." *Id.* (citation omitted). In other words, in determining the admissibility of statements made by a child declarant under this exception, this Court analyzes whether the child had the requisite intent under Rule 803(4) to provide the truth, which is the underlying rationale for the hearsay exception. *Id.* (citation omitted). In such analysis, although no specific factor is dispositive, the following three factors are the most probative in ascertaining the truthfulness of a child declarant's statements: (1) whether an "adult explained to the child the need for treatment and the importance of truthfulness;" (2) "with whom, and under what circumstances, the declarant was speaking;" and (3) other circumstances, such as "the setting of the interview and the nature of the questioning." *Id.* (quoting *Hinnant*, 351 N.C. at 284, 523 S.E.2d at 668 (citation omitted)).

An evidentiary error does not require a new trial unless the error is prejudicial. *See State v. Wilkerson*, 363 N.C. 382, 415, 683 S.E.2d 174, 194 (2009) (citations omitted). An error is prejudicial to a defendant "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been

reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2023). Moreover, a defendant has the burden of demonstrating such prejudice. *Id*.

Here, Defendant attempted to introduce Mary Margaret's Carousel Center report which contained statements expressing that the mother had coached Abigail. Assuming arguendo Defendant satisfied the two-pronged test for the medical diagnosis or treatment hearsay exception, he must still show prejudice. Therefore, before addressing the merits of Defendant's argument, we first analyze whether the alleged error prejudices Defendant.

Defendant argues that exclusion of Mary Margaret's Carousel Center report was prejudicial because it would have undermined expert testimony denying that Abigail was coached. Since the most significant evidence of Defendant's guilt is Abigail's identification of him as the perpetrator, the exclusion of evidence suggesting that her identification was the result of coaching could have been prejudicial. However, Defendant does not sufficiently demonstrate that Mary Margaret's Carousel Center Report would have provided evidence that Abigail was coached into identifying Defendant.

In attempt to persuade the trial court to admit Mary Margaret's Carousel Center report, Defendant claimed there were extensive "concerns from the medical providers that Mom's been coaching" contained within Mary Margaret's Carousel Center report. Defendant did not specifically state what the report would have alleged that Abigail's mother had coached Abigail to say. Unable to enter the actual

report, Defendant inquired about the Carousel Center's interview with Mary Margaret during his cross-examination of Ezzell. Defendant asked if there were "ever any concerns of coaching" during the interview. Ezzell responded that the concerns for coaching were actually that Abigail's mother had a hard time understanding or accepting that Defendant could be the perpetrator and "was potentially going to coach the child out of saying who did this, not coach the child into saying it was [Defendant]."

On appeal, Defendant fails to explain how details of the coaching within Mary Margaret's Carousel Center report would differ from Ezzell's testimony. Accordingly, Defendant has not demonstrated that admission of the report would have provided any new evidence likely to sway the jury toward a different result. Furthermore, even if the report would have persuaded the jury that Abigail had been coached, Defendant has not demonstrated that the report would have suggested that Abigail's positive identification of Defendant as the perpetrator was the result of coaching. If anything, Ezzell's testimony indicates that the report would have suggested that any statements Abigail made to the contrary may have been the result of her mother's coaching. Such evidence would more likely reinforce the jury's determination that Defendant was guilty than change it.

Since Defendant fails to show a difference in statements concerning mother's coaching between Ezzell's and Mary Margaret's statements within her Carousel Center report, Defendant fails to show a reasonable possibility of a different result.

Thus, Defendant was not prejudiced by the alleged error. Since we hold Defendant failed to demonstrate prejudice, we do not reach whether Mary Margaret's report falls within Rule 803(4). Therefore, we refrain from ruling on the admissibility of this report.

### 2. *The Public Records Hearsay Exception*

Defendant claims the 7 April 2022 DSS report was admissible at trial under Rule 803(8).

Rule 803(8), the public records hearsay exception, in part, excepts records or reports,

> in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law-enforcement personnel.

N.C. Gen. Stat. § 8C-1, Rule 803(8) (2024). Nevertheless, "Rule 803(8) does not apply where 'the sources of information or other circumstances indicate lack of trustworthiness.'" *State v. Little*, 191 N.C. App. 655, 666, 664 S.E.2d 432, 439 (2008) (citation omitted). "'Guarantees of trustworthiness are based on a consideration of the totality of the circumstances[,] but only those that surround the making of the statement and that render the [statement] particularly worthy of belief.'" *State v. DeJesus*, 265 N.C. App. 279, 289, 827 S.E.2d 744, 752 (2019) (citation omitted). "A

trial court's determination as to the admissibility of hearsay is reviewed de novo." *State v. Fraley*, 299 N.C. App. 463, 466, 918 S.E.2d 910, 914 (2025) (citation omitted).

Furthermore, even if the report itself falls within the public records exception, "any hearsay contained in the report must also fall under one of the hearsay exceptions." *See Bolick v. Sunbird Airlines, Inc.*, 96 N.C. App. 443, 446, 386 S.E.2d 76, 77 (1989) (citation omitted).

Here, assuming arguendo the 7 April 2022 DSS report is admissible under the public records exception, there are other layers of hearsay within the report: Abigail's alleged statements as well as the statements from the unknown individual who reported Abigail's statements. Defendant failed to argue other applicable exceptions for these additional hearsay layers. Therefore, on appeal, Defendant waived his arguments for admissibility for those additional layers of hearsay. Thus, such statements are inadmissible.

The presence of double hearsay does not automatically mean the entire report is inadmissible. However, we hold the remainder of the 7 April 2022 DSS report is inadmissible, as well: the report was created based on an allegation from an unknown individual. *See Little*, 191 N.C. App. at 666, 664 S.E.2d at 439 (citation omitted). Therefore, the source's unknown identity inherently lacks trustworthiness and that declarant is not particularly worthy of belief. Thus, the trial court did not err in excluding the 7 April 2022 DSS report.

### III. Conclusion

Defendant did not carry his burden to show the exclusion of Mary Margaret's Carousel Center Report prejudiced him. Also, the trial court did not err in its exclusion of the DSS report.

AFFIRMED.

Judges ARROWOOD and STADING concur.